So I'll let your co-counsel, your friend on the other side, get seated. Are you ready? Okay. All right. We're ready to hear your argument. Good morning, Your Honors. May it please the Court, my name is Dow Patton. I represent Dr. Jordan Spatz. Spatz? Yes, Your Honor. Thank you. In this matter and with the court's for rebuttal. Your Honor, the District Court below, indeed, did pay mere lip service to the long-standing standard for assessing summary judgment. To wit, the evidence must be, in the record, must be viewed in the light most favorable to the nonmoving party, in this case, Dr. Jordan Spatz. As this Court reviews the case, it is clear that the District Court simply ignored both direct and circumstantial evidence that create genuine issues of material fact that can only be resolved. But aren't you here just on an injunction? No, Your Honor. We previous we are seeking injunctive relief, yes, Your Honor. Right. So that's the posture. So in order to get to the merits, we have to find pendent jurisdiction, correct? Your Honor, this is Federal question jurisdiction under 42 U.S.C. Well, but you're, you're, you're appealing an injunction. No, Your Honor, we're appealing. You want, you want, you want this Court to admit him to the UCSF Neurosurgery Residency Program. Is that correct? Your Honor, we've sought injunctive relief. That is one element of injunctive relief, including advocating for Dr. Spatz in his applications to other residency programs, providing. Let me just ask you a question that I, right now, if, he's in a residency program right now in surgery, correct? He is not presently in a residency program. He's not? I don't know. I, I know that's out of the record, but he's not? He is not. He is still looking for a residency program, Your Honor. Okay. All right. So it's not moot. It is not moot, Your Honor. He is continuing to cert, and this is particularly important with respect to the injunctive relief. Of course, we're going to seek, seeking an injunctive relief to have him admitted as a resident in neurosurgery at, at his, at the institution that engaged in discrimination against him. However, it's much more than that. Giving him credit for his intellectual property and, and, and work in patents, identifying him as a member of a particular lab, which they just erased from, erased from the Internet with no explanation, no other, there is no evidence that any other member of any lab has been erased from the Internet's description of who does what in these particular labs. Well, okay, so he has to bring this under the Age Act, correct? That is correct, Your Honor. Because he, at the time, he was not over 40. That is correct. So he can't bring it under the, what is it, the ADA? Yeah. The ADEA. ADEA, yeah. So he has to bring it under. So if the Age Act does not apply, then we're done with everything here. Is that correct? You have to show that the Age Act applies. We do have to show that the Age Act applies, and it does, Your Honor. The conduct that we're talking about here occurred to Dr. Spatz while he was a medical student, and these are actions taken by the School of Medicine against one of their own students. But you would agree that he wanted to be hired as a medical resident, which would have required him to work 80 hours at the hospital a week, he would be taxed as an employee, and he would receive salary and benefits from the hospital, correct? If he had been hired as a resident. Correct, Your Honor. And the Mayo decision does indicate that for FICA purposes, medical residents are treated as employees. However, there are So why shouldn't we follow the long line of cases that treat residents as employees? Your Honor, we would respectfully disagree that there's a long line of cases. The Mayo decision is the decision that has actually come forward in treating them as employees for FICA purposes. Right, but the California Supreme Court said medical residents are employees for collective bargaining under state law. The NLRB has reached that same conclusion under federal law. The California Court of Appeals also found that a decision to dismiss a medical resident from a residency program was not entitled to academic merit, but that a medical residency program is an employee-employer relationship. Indeed, Your Honor. That's a lot. The State Supreme Court, the U.S. Supreme Court, the National Labor Relations Board, the California Court of Appeals. Why shouldn't we follow those line of cases? The last case, Your Honor, referenced, indeed said predominant, the predominant nature is that of employment. It is also graduate medical education in addition to being employment. Employment may predominate, but it is in addition to being graduate medical education. Now, for the purposes of the injunctive relief, Judge Kagan, that we were seeking injunctive relief that will permit my client to be treated the same as all other graduates of the medical program, which is to receive a correct treatment of his contributions to the science, his contributions to publications. These are the things that are essential for somebody to be able to have a fair shot at residency. In another program, and we believe that the statute is, and we believe it's very clear, that the statute prohibits discrimination while you're a medical student, regardless of whether it's residency. And he's still being discriminated against in that education because he's the only person who the university has refused to provide the ordinary letters of recommendation for his ongoing applications to residency in other programs. That we see... I ask you, in your reply brief, you rely on legislative history to argue that the AJAC applies to medical schools. What were you citing? Because there's no citations on page 3 and 4, and a search of the legislative history didn't pull up these quotes. What's your source? Your Honor, we had cited to, on page 3, we had cited to the... The sections, whatever's on these pages, it didn't show those quotes. I apologize, Your Honor. I'll try to provide those in reply. You're not going to get any further reply. I don't want any more briefing if that's what you're offering. No, no, I'm rebuttal. Thank you, but no. No, I'm rebuttal, Your Honor. Okay. Thank you. That'd be helpful. So if I understand your argument, you are parsing between things that occurred when he was a medical student and then his application for a residency program. So if we agreed with that and concluded that there was actionable discrimination from when he was a medical student, how would the remedy be that we would issue some sort of equitable relief ordering the UCSF to admit him into the neurosurgery residency program? I mean, that seems like a wholly different entities, right? The university, there might be a claim against the university if your assessment of how we parse this is correct, but how does that lead to putting him in the residency program? So, Your Honor, the respondent here is the Regents of the University of California. Regents are the proper party for litigation. But you're arguing that he was discriminated against while seeking employment or seeking a residency program. You want to say it's a hybrid, it's maybe educational and employment, but as Judge Koh noted, quite a bit of case law that suggests it's really an employment issue. So applying for employment seems to fall within employment. Certainly, Your Honor. However, what we've asked for, and we believe that a remand back to the trial court to have evidentiary hearings on what would be necessary to remedy the discrimination that we've alleged. Okay, so what if we did that? And the court ordered the regents to reinstate his listing as an author on some research and whatever was on the website. Still not in the residency program, right? That's correct, but it would certainly help remedy some of the harm that has befallen him and continues to befall him because he's not getting credit for the patents that he brought intellectual property to to the School of Medicine. He's not getting listed as co-author on the publications that are essential to demonstrating his intellectual prowess and contribution to science. He's not getting letters of recommendation that every other student gets when they're applying for residency and other things. And perhaps, Your Honor, the most important potential injunctive remedy is that remedy which the regents themselves, which we identified in our opening brief, assured the Department of Health and Human Services it would do, which is change its policy to include age as a prohibited basis of discrimination in the university's policies. The Department of Health and Human Services Office of Civil Rights left open its complaint, its administrative complaint during the pendency of this litigation and only closed it after summary judgment based upon the assurances of the regents that they would change, that they would remedy the behavior, which was to change remand this matter back to the trial court to determine what is the appropriate injunctive relief here to remedy this discrimination. It may not be put him in a residency program. It may not be that. But it may be holding them to their word, making them change their policy, having them Dr. Spatz being treated like every other medical school student and have them not continue to retaliate against him for having brought this matter forward. I see my ----  Would you like to reserve the balance? Can I ask one more question? Sorry. So under the Age Discrimination and Employment Act, a district treatment plaintiff has to show that age was the but-for cause of the adverse employment action. Do you agree that that's the test here as well? The deliberate indifference standard, we believe, applies from Title VI. We believe that by demonstrating deliberate indifference that ---- What, deliberate indifference to age? I'm a little unclear. Yes, deliberate indifference to age discrimination. What's the authority? I mean, you know, the ADEA and the Age Act are very similar. And what's your best support that it has a different test than the Age Discrimination and Employment Act? Your Honor, the ---- I believe the district court below and both sides assumed it was the case that the deliberate indifference standard applied. We addressed that, Your Honor, in ---- I think she's asking you if it's the but-for test, that it has to be ---- the but-for test is obviously a higher test. But-for causation? Yes. I believe so, Your Honor, and I believe that there is the direct evidence that we cited in the record, which was ---- No, but is do you believe that the but-for causation is the correct test for the Age Act? We believe that the deliberate indifference standard is what applies and that the causation element is but-for causation. Okay. You do think it's but-for causation? Yes. Okay. Thank you. Thank you for that clarification. Okay. So I'll give you ---- we asked you a few questions, so I'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. All right. We'll hear from UCSF, the Regents. May it please the Court, Don Willenberg of Gordon-Reese for ---- Good morning. I believe the Regents of the University of California. This Court should affirm for two reasons. First, because the sole claim on appeal is under a statute that does not apply to, quote, any employment practice, unquote. Hiring someone to work as a medical resident is an employment practice. Second, even if the statute applies ---- You don't cite any evidence in the record. You just cite a bunch of cases. It's a factual question. So what evidence do you have in the record that this is an employee? Well, there is plenty of evidence that they were working 80-hour weeks, that they'd be doing rounds like a doctor does. We do not have evidence in the record for some of the other things that every case that's looked at it and decided that residents are employees has said. For example, are they subject to FICA? Are they subject to other things? Council seems to have conceded that at argument just today, and that's been, I would say, not contested either below or in the briefing here. So you think it's that they work 80 hours a week and they do rounds like a doctor? Is that it? What specifically do you have in the record to support that these are employees? That's what we have. So there doesn't seem to be any dispute that the members of the residency selection panel discussed and made negative comments about Dr. Spatz's age. So why shouldn't this case go to a jury to decide whether Dr. Spatz was not accepted into the UCFF program as a result of age discrimination? If we assume that the Age Act applies to residency selection, then would you concede this would have to go to a jury? No, not at all, Your Honor, and here's why. You need a little training on some of the comments that are made. That may be, Your Honor, but let's look at who made the comments and what they did. We have a particular section in our brief on page 31 that goes through five or six of the things that counsel talks about, but I would like to focus on two here. One is there's a lot of concern or there was concern expressed that one of the members of the committee had noted on the interview form that he was 36 years old. But there was some instructor that said he's older than, he didn't say he was older than Methuselah, but I would love to be 36. That doctor, Dr. Callahan, was not a member of the selection committee, did not vote on the matches in 2020 and 2021. The 36-year-old, and again this is something that their thing shows by us, said okay to rank both years, 2020 and 2021. Well, Dr. Spatz declared that UCSF had ranked him, quote-unquote. If they had ranked him, he would have matched with UCSF. Do you dispute that, and if so, what is your evidence? I dispute that. No, I don't dispute that. Had the members of the selection committee all voted differently than they did, that perhaps he would have matched because he had put UCSF so high. But let's go back. But some people ranked him, right? Some people did. There were some that ranked him top three. Some people did. There were some that said he could go ahead, and then there were some that basically seemed to say that he kind of was a little bit lazy or didn't want to work really hard or something. Excellent understatement, Your Honor. I'd also point out that even, for example, Dr. Aghi, who was his mentor, who did vote to rank him, is the same person who he's complaining about, well, he took me off his website and he didn't give me credit for authorship, for neither of which is there any evidence in the record that that was based on his age. That has to do with other considerations altogether and doesn't form the part, the basis of an age discrimination claim, even if he otherwise had one under the law. Another doctor that they complain about, well, there's a statement about stamina, and I was asked if I could work 80-hour weeks, and that shows age discrimination. Well, that was Dr. Mominenyi, and he voted okay to rank both times. So those who ---- Why isn't it a fact question for a jury, since this was a motion for summary judgment, to decide whether stamina, burnout, all these are not code words for age? Well, there's plenty of cases, and we've cited some, that say that those are not necessarily about age, and they are directly relevant to the job description and the requirements of the job. Can I ask you, going back to the first question, so you're saying there's no evidence in the record that medical residents are taxed as employees or that they receive salary and benefits from the hospital, other than counsel's concession here at oral argument? There's nothing else that we can cite to in the record for those two points? I believe that that's true. So then what is a test for deciding whether a resident is an employee, just whether they work 80 hours a week and they do rounds like a doctor? Is that it? Are they more like employees, or are they predominantly more like students? This is not an undergraduate student getting a job at the cafeteria to make ends meet. This is something very different. I agree. But isn't this a factual question, whether these residents are employees? Then what are we to do if there's no evidence in the record that they're taxed as employees and they receive salary and benefits from the hospital? Because that's what those cases I cited, they rely on that, right, that they're getting taxable income. That's right. They rely on that, and we rely in large part on the fact that those cases say that. Right, but then you have no evidence in the record that your residents are getting salary and taxed as an employee. That's the problem. You're saying, well, rely on these cases, but my factual record doesn't have those facts. It doesn't have all of that. That's right. It talks about the job, and again, even counsel has not contested that fact. It is possible, I suppose, that these residencies are different than the residencies described in every one of the cases. So you're saying we can't even assume that they're taxed as employees or that they receive salary or benefits from the hospital? I'm not saying we can't assume that. I'm saying that we can reach that conclusion based on all this. Well, what does the record say? We do not have a declaration that says this is what residents get. That is not in this record. You just conceded that we couldn't conclude basically as a matter of law that this is what happens in a residency program. You're paid. You work. You take care of patients. You're trained, but you're basically an employee working 80 hours a week. But we can't reach that conclusion just as a matter of law. We have to have some facts. Are you agreeing with that? If you can't reach that conclusion based on this, I say you still affirm, and you still affirm because none of the comments about age had anything to do with votes on whether or not to rank him. So you're saying we just we could skip past the first argument that the ADA doesn't apply because this is an employment decision. We assume it does apply, but then we just say on the facts it fails. Either way. Either way, Your Honor. Yes. That's what I said at the beginning. There's two ways to get here. One. And your second one is a lot weaker. I guess I disagree. It's a motion for summary judgment. Yes. We've got to draw the inferences in favor of the non-moving party. There are a lot of comments here. Like Judge Callahan said, a jury could come out the other way. I actually think that if a jury came out the other way, it would be subject to a post-trial motion because the specific comments made are not either in connection with his match or somehow showing a short certificate. There were comments about his interview for a residency match that were certainly age-related. I guess I'm not sure to what you're referring to there. On the interview, most of the interviews said he was kind of slow or he had some auditory processing or something like that. And how is any of that discrimination against him based on age? How can there be a sense of that? Dr. Gupta, 36-year-old is an area of concern. And Dr. Gupta voted to match him both times. Both times. But doesn't that, if we view that in a light most favorable to the plaintiff, doesn't that suggest that this was something that was discussed in the process and they were considering his age? Not beyond what it says. And, again, if that's what's— Dr. Bervin told Mr. Spatz, Concerns about you burning out a residency came up during the rank selection meeting and that plaintiff was described as an older applicant. Somebody made a comment that he could go straight from his residency to a nursing home. Who was that and when did that happen? That happened after the match selection process. But was that from a person who was involved in the process? No. I'll answer that in just a second. I think it was not. I think it was by someone who was — yeah, there's no evidence that Dr. Dahl was involved in the match. And he's the one who said that. Who said that you're only going to be able to work 25 years? I realize that Dr. Spatz got a Ph.D. from MIT, so it wasn't like he was just, you know, surfing around the United States or the world while he was getting older. But that being said, who was it that seemed to, I mean, say you're only going to be able to give 25 years to the profession? I don't recall. I don't recall if that was a person who was a match or was one of his other mentors like Dr. Starr, who supported him up until Dr. Starr read about the performance reviews on the sub-internships, which every witness said was the most important thing in determining whether or not to grant him a match, and which almost every witness said his performance was between suboptimal and terrible. Well, and that's why you might win in front of a jury if it gets to that point, but that isn't why you necessarily win at summary judgment. I think if the AJACT doesn't apply, in my view, it gets harder to win at summary judgment. If the AJACT applies, if he can't get around that, then the rest of it falls away. Well, that's right. That's right. You know, Dr. Spatz didn't match into this program. 297 out of 300 applicants every year do not match into this program. There's no evidence that he was selected out and didn't make it because he was of his age. Counsel suggested many times, he's been the only person treated this way by the university. Well, no. There's 297 people every year who try to get into this residency and don't get into it. I hope they don't say on all 297 of the other people that either you're not getting it because you're a woman or you're not getting it because you're old or you're not getting it for this. I mean, that's what he has in his, if he gets to that point. The question is, does he get past the first point? He doesn't have evidence that that's what made the decision here. How much discovery was completed before summary judgment in the district court? I'm not sure of the answer to that question, Your Honor. I know that Dr. Spatz was deposed over two or three other depositions. It was not a terrible amount. Dr. Spatz not only didn't make it into UCSF's residency program, he didn't match for any other neurosurgery program anywhere else in the country. His reach exceeded his grasp. He aimed too high and he didn't get there. That's disappointing, but it's not actionable. And there's nothing in this record to show that these people made the decision to not match him because of his age. Well, your friend on the other side says that things that happened while he was a medical student, removing him from the website, taking his name off articles, those things damaged his applications in the MATCH program. So he's parsing out between things that occurred to him as a medical student and things that occurred in the MATCH process. How do you respond to that? First, there's no evidence that those other things, the authorship or the inadvertent and temporary removal of him from a website, were motivated by age. He just includes those on a laundry list of complaints and says, see, there must be something wrong here. Well, those don't have anything to do with the MATCH. What we're here, what he's here for now is complaining about that he was denied the opportunity to match because of his age. The facts don't show that. It's under a statute that doesn't apply. So this court should affirm. All right. Does anyone have further questions? All right. Your time's expired. Thank you for your argument. A couple of points, Your Honors. First, Dr. Campbell's comment that Jordan is as old as pejorative. Dr. Campbell was a decision-maker on the supplemental or SOAP, S-O-A-P, process. If you don't match during the first time around, Dr. Spatz also applied for general surgery, as to which Dr. Campbell was indeed a decision-maker. Sorry, we're a little bit short on time. Let me just ask, in your briefing, you seem to concede that the residents receive a salary and benefits from the hospital and that they certainly are working 80 hours a week. You concede that in your briefs, correct? I do. We do. Okay. And there seem to be at least two record sites, ER-177 and ER-739, that support that medical residents are paid a salary provided with benefits by UCSF and are taxed as employees, correct? That is correct, Your Honor. Okay. And we would also note that much of the evidence in the record is that sub-internships, when you're an intern in a medical school, you are doing much of the same thing that the residents are. You are working many hours, and indeed that was one of the complaints about Dr. Spatz, is they allege that he wasn't available enough hours. You are performing rounds with residents. You're taking medical histories just like a resident would. So there is an educational component. It's not an either-or thing. There's an educational component to residency. Otherwise, why would there be residency? Why don't they just go out to a hospital and work for three years? They don't. It has to be supervised by a medical school. It's in a medical school. It's not just in a hospital. It's a medical school. I see my time has expired, Your Honors. If there's no further questions. There don't appear to be. Thank you both for your argument. This matter will stand submitted.
judges: CALLAHAN, BADE, KOH